BABY PRODUCTS, et al., 2011-11-57. And before we begin, we have a great deal of confidential material here, much of which is quite relevant to our understanding and deciding the case. So I would like to ask both counsel whether they waive confidentiality to the extent that we are able to speak both in open court here and write opinions on the basis of information in these important documents. Well, Your Honor, I think the primary confidential information, at least as it's reflected in the briefs, are the dispute resolution agreements. And I think that we, Kimberly-Clark, is willing to waive confidentiality as to the terms of those agreements. I agree with counsel, Your Honor. Okay. Thank you very much. Mr. Trello, please proceed. Thank you, Your Honor. May it please the Court, this appeal presents two issues. First, is there a federal mediation privilege? And second, if there is, does it apply in this case? The answer to the first question we submit is clear. There is a federal mediation privilege. Although no court of appeals has addressed the question yet, the district courts that have done so, including the court in this case, have recognized the privilege and we believe those decisions are correct. The answer to the second question, whether the privilege should apply in this case, is also clear. It should apply. The district court reached the contrary conclusion here because the ADR processes at issue use some litigation-style procedures, were called nonbinding arbitration rather than mediation and called their neutrals, or used neutrals who were called arbitrators rather than mediators. The agreement has arbitrators written all over it. It absolutely does, Your Honor. But none of that really goes to the substance of the process. The substance of the processes here were that they were nonbinding, they were designed to facilitate a possible voluntary settlement of the underlying disputes, not to impose a decision on the parties. The processes were adversarial in nature. They were. So they just simply don't take the flavor of a mediation. Well, Your Honor, I think that that takes a narrower view of mediation certainly than some of the courts and some of the commentators have. I think the right way to look at mediation, of what is a mediation, I think it's a process where parties use a neutral third party as an intermediary to issue, to act in a nonbinding way but to try to facilitate a voluntary settlement. And if you accept that as sort of the core of what makes something a mediation, these were undisputably mediations because the neutrals here did not, although they issued something called a decision, it didn't decide anything in any sort of a binding or Didn't the loser have to pay attorney fees? No, the loser didn't have to pay attorney's fees. The loser paid the fees of the mediation. But at the appellate level, if there was an appeal taken, then the loser would pay the attorney's fees. At least under some circumstances, that's correct, Your Honor. So yeah, absolutely, the agreements provided for that. But again, the process did not, I mean, it declared a winner or loser in the sense that after going through this exercise, there was a winner and a loser, but that decision had no consequences other than the allocation of the cost. And also the allocation of the, well, the obligation with respect to prior damages for prior infringing activity under certain circumstances. I understand you argue, well, that wasn't raised adequately, blah, blah, blah, but it's in the agreement and it is a form of coercive, if you will, if not binding effect, right? No, I would disagree with that, Your Honor. And we'll put aside whether it was waived or not. I want to talk about the substance of it. Well, if the plaintiff, well, go ahead. And they were done in the form of stipulations attached to the agreements. And what the stipulations were, first of all, they were themselves a voluntary agreement. Yeah, but the stipulation part can't matter, right? Because you could have a stipulation, if we lose this arbitration, we will pay you all the damages that the arbitrators in their non-binding manner have said that we owe you. That would be binding, right? The stipulation factor doesn't matter. Oh yeah, no, I was just But the stipulations were essentially an offer to settle. What they said was up front, if you, the accused infringer, agree to participate in this process, and the process comes out a certain way, namely you lose everything, we agree that we'd be willing to settle. And our commitment will be we won't seek past damages. Your commitment is you stop the infringing agreements. The decision triggered it. It didn't impose it. What the decision did was it created a situation where one party would then be faced with the choice whether to accept the settlement offer. I think that's a fair way to look at it. What if the arbitration led to a decision and the agreement of the parties was that that decision would be binding in the sense that it would require the payment of money or the cessation of activity, unless the dissatisfied party decided to sue in court, in which case the arbitration would have no effect, whether in a declaratory judgment or in a coercive action. Would that be, in your view, binding? I think it would not be binding, Your Honor, because I think that, and this is reflected in But a lot of state courts have exactly that procedure in their actual litigation. You frequently encounter in state court systems situations in which you go to trial and it's at a very low level, often a non-jury trial. You get a resolution. And if you don't like it, you can have complete trial de novo. The original trial didn't happen in the higher court. But there's no doubt that the first trial is binding. It's an adjudication. It's just an adjudication from which you can get de novo review, or no review at all. You get de novo proceeding. But that would seem to me that it's very hard to say that that wouldn't be a binding arbitration. It's just that you have an escape clause. Well, that's certainly one way to look at it. Now, that's not what we have here, but in that situation, it seems to me that where a party has the option to basically walk away and say, this didn't happen. It's hard to see how that's binding, because it's binding only if the parties agree that it's binding after the end of the process. And you see this notion reflected in the Third Circuit cases that talk about whether something is an arbitration for purposes of the FAA, the Harrison case and the Bluehost case, where they basically say, and I forget which one it was, but in one of them, it was a similar process where a party could essentially opt out afterwards and pursue litigation anyway. And admittedly, they weren't looking at a privilege issue, but they were considering whether it was an arbitration. And they said it's not, because basically a party has the option to opt out or comment about this being certainly seemingly an adversarial process. To some extent, obviously, any mediation is adversarial in the sense that you've got parties with, they have a dispute, first of all. They've got competing interests, competing positions, and that sort of thing. The real question, I think, when you're considering where the privilege should apply is what incentives exist in a particular proceeding. I think if you start from the premise that mediation, however you define it, is in the public interest and is something that should be encouraged and incentives should be created to pursue it, all of those incentives exist even if you have a procedure that has the kinds of, if you will, adversarial processes that we had here. Because the overriding concern, I think, is you don't want to create a situation where by agreeing to participate, and again, these are all voluntary processes, so this is a choice. By agreeing to participate in a process, do you expose yourself, are you prejudicing yourself? Do you expose yourself to having your participation and what happened as a result of your participation used against you as a club down the road? And whether you're pursuing something that's sort of the more traditional model of mediation where people sit around a table and talk about their feelings or their interests or their innermost secrets, or you have a more structured process like this, in either event, you're creating materials that wouldn't otherwise exist and that can be used against you in another case down the road, and that creates an enormous disincentive to participate because when you go into one of these voluntary mediation-like processes, you might or might not get any benefit out of that. You might or might not accomplish anything in that case, but what you're almost certainly doing is you're creating materials that can be used by other adversaries in other cases down the road, and that really creates an enormous disincentive to participate in this kind of a process. The other concern, I think, if you focus on, as the district court did here, if you focus on the particular procedures that are used, you're really taking away some of the flexibility of the mediation process. One of the main attractions of a voluntary non-binding process is the parties can design it really to suit their own situation, to suit what they think would best resolve their In the mediation process, more secrets are told to the mediator and strategies, maybe even pricing data and things of that nature that don't normally, that you would safeguard in arbitration, and isn't that what happened here? You're safeguarding information which under other circumstances, a mediation circumstance, would be divulged. Well, certainly there are mediations that fit precisely the model that Your Honor just articulated, but I don't think that you can confine mediation to that model, because here, it's true, because of the way this process was structured, and just by way of background, as we explained in the briefs, these procedures were designed to deal with two parties that had been in bitter, bitter litigation for a decade, had very little trust between the parties, to say the least, but the process was designed tailored to their particular needs, and they determined that their particular needs would be best served by a process that, certainly adversarial in nature in terms of the procedures, but that would basically give them some insight into what would happen if we instead of arbitration? Well, Your Honor, I think competent counsel, which was not me, incidentally, but equally competent counsel, I think it didn't occur to counsel that the label attached to it should matter. What should matter is the substance of the process, and whether you... Competent counsel always know that words matter. Of course words matter, Your Honor, but hopefully substance matters more. So does time. You're into your final question, and not use up Mr. Travis' time with the leave of the presiding judge. I just have a quick question. Sure. Going back to your assertion that there would be no incentive to engage in a process like this, I'm a little hard pressed to see why that's so, for this reason. Your choice is where you either go through a process like this, or you litigate. If you litigate it, all this stuff's going to come out, and all this stuff is going to be available to the defendant in this case anyway. So why are you worse off for engaging in this form of arbitration mediation than you would be if you'd gone through litigation, which was your other choice? Well, Your Honor, that's true in any mediation situation, whether it's this kind of a process... But the difference, it seems to me, is that what you had done is a mock litigation so that it's highly unlikely that any materials that come out in the course of the arbitration would be any different from the kind of materials that would come out in the litigation, which would be very possibly not the case with an actual conventional mediation. Well, I would disagree with you concerning the nature of the materials that would come out of it. First of all, you've obviously got the parties' arguments and briefs and responses and that sort of thing. That might eventually come out in litigation. Obviously, Kimberly-Clark's positions and theories and strategies would eventually come out in the litigation with, in this case, first quality. But first of all, no litigant wants to give adversaries a head start. The other thing that wouldn't come out are the other side's theories, responses, and all that sort of thing. There's no reason that first quality would have any insight into what Proctor and Gamble's theories were. They'd just go down to the courthouse and pull out the... Oh, in litigation, sure. I'm sorry. In the litigation. And the question is, do you have no incentive to engage in the arbitration on the ground that you don't want to give up something that wouldn't otherwise come out when the other option is to go through litigation, in which case it all comes out? Well, Your Honor, but the overriding policy is to encourage parties to take that non-litigation option. And to do that, if we're in the same position, if we do the non-binding arbitration or mediation or we do litigation in terms of what comes out, well then we're indifferent between the two. But the policy is to if by doing that you're creating things that are going to be used against you later, as first quality admits it wants to do here, that's a huge disincentive. Mr. Trella, we'll give you three minutes rebuttal time. Thank you, Your Honor. Thank you. Mr. Underhill. Thank you. May it please the Court. We believe that the District Court did not abuse its discretion in ordering the discovery here. We ask for affirmance. The District Court was right when it issued its decision, and recent filings in the District Court underscore the importance of these materials to the underlying litigation. What's your response to the questions that were raised by my fellow judge, Judge Lori, about what you call this process? Well, certainly we would agree that they could have called it a banana, and it would have come out the same way. However, that's not the same thing as saying the label is irrelevant. People call something by a label because that's what it is. The parties call this arbitration because it is arbitration. The key distinction between arbitration and mediation is whether it's combat or whether it's compromise. In mediation, you have an incentive to bear your soul. As the Wisconsin judge said in the McNeil case, you're encouraged to admit that you're only holding a pair of sevens rather than a flush. That's not the way it works in arbitration. In arbitration, it's best foot forward. You tell your best story. You do it honestly and with integrity, and you follow the rules of ethics, but by golly, you're not going to confess weaknesses. Those are the differences. I'm sorry? There are a lot of mediations in which that's effectively what happens. It's not the instinct of lawyers to come in wearing their hearts on their sleeves and saying, you know, we have a bunch of weaknesses in this case, so let me hurry to tell you about them. By and large, mediations, in my experience at least, are two sides come in and both of them say, we're going to win this case, and the mediator's job is to say not so fast. So I'm not sure. It seems to me there is a rather smooth curve between the sit down separately with the mediator and have a heart-to-heart talk over coffee type mediation and something that is as formal as a binding or, you know, either quasi-binding or non-binding, depending on whether we believe you or Mr. Trella, type of arbitration. And the question is, where do you draw this line on privilege? Because you would agree, I suppose, at least arguendo, that there ought to be a privilege for the heart-to-heart talk over coffee type mediation. Right. I think there's at least two questions there, Your Honor. Let me take them in order. I do think it comes down to what is the ultimate resolution that this individual that you're presenting to is going to do? Is this individual going to say, you're a winner and you're a loser? If that's the answer, then it's not mediation. If, on the other hand, it's, come on guys, let's get a settlement here, that's mediation. With respect to your question about should there even be a mediation privilege, I believe the answer is no. I don't believe the issue is well presented here for the court to address this. No appellate court has ever addressed it. The law at the state level is not nearly as uniform as Casey would suggest. We have put in our papers the 24 state statutes which recognize it as a mediation. The others will have varying degrees, I mean, just crazy quilts of confidentiality restrictions for some things and not others. You're making ADR people in courts around the country very nervous right now in saying all this because they rely on being able to say, every district court has ADR people who rely on being able to say, this is privileged. I'm not going to be called as a witness in the next case to tell what you've been telling me. And you're saying they don't have the right to say that? Not at all, your honor. So you could call as a witness our mediation officer to find out what Mr. Trellis said about a case that he had pending in the federal circuit? Not at all, your honor. You say not at all or yes? No, you can't do that. There's a rule that governs confidentiality and mediation. The rule is binding. We're not suggesting that courts can't have rules that govern mediation in their court. But you just don't call it a privilege? Well, you don't call it a privilege and it works differently than a privilege. And let me illustrate this. Are you talking about rule 408? I think 408 certainly comes into being. But that only deals with admissibility, right? Absolutely, it only deals with admissibility. So you could ask someone in discovery, you could ask the mediator what was said. You just couldn't bring the mediator into court. No, because there's a court rule that you may not delve into the mediation process and the participants are not allowed to disclose what went on in the mediation process. Those are enforceable. That does not, however, mean that it's a privilege. There's a distinction between a privilege and confidentiality requirements. And let me illustrate it. In the white brief at page 8 to 9, opposing counsel argues that whether or not they call it a mediation or confidential, it's not really very important. And they say, look at the Texas statute and the Arizona statute. They say the same thing. And yet, Arizona calls it a mediation privilege and Texas does not call it a privilege. Well, I would urge the court, please do look at the statutes. First of all, the language is different. The Arizona statute is much more encompassing. It's everything associated with the mediation. The Texas statute, in one sense, is actually broader because it also covers, by the way, arbitration. The Texas statute does. But it only covers a real little piece of it. It covers what a participant says in the hearing. If you look at the case law, the Texas courts turn over all kinds of materials in discovery interpreting their statute, which is not a privilege. For example, in Enray Learjet, which is at 59 Southwest 3rd 842, the Texas Court of Appeals in 2001 allowed discovery of videotaped witness testimony that was prepared solely for the mediation. One party goes off, they videotape their witnesses, they bring it in, they show it at the mediation. Mediation fails. Other side turns around and says, we want the videotape and we want the raw videotape underlying the stuff that you edited. And the court says, yep, you got it. And it goes to the appellate court, and the appellate court says, yep, you got it. The statute doesn't cover that. In Knapp v. Wilson, this was actually an arbitration, not a mediation. It's at 281 Southwest 3rd... Is this another Texas case? Yes, sir. I didn't think we'd travel all the way to Oregon to hear about Texas law. Well, I think it applies here, though, Your Honor. 281 Southwest 3rd 163. Again, Texas Court of Appeals. Here, the trial court refused certain discovery related to arbitrations. And again, the Texas court, interpreting this exact same statute, turned over witness statements, deposition testimony, identification of expert witnesses, identification of witnesses that testified in the arbitration, the pleadings, and the award. So there is a whale of a difference between a privilege and the hodgepodge of confidentiality restrictions that the states have come up with to protect mediation. And we're not attacking mediation. I mean, these state statutes and these court rules are perfectly valid. But that's very different from whether this court should develop a federal common law mediation privilege. And our position certainly is that they should not. And especially should not if this case is an arbitration. I beg your pardon? And especially not if this case is an arbitration. That is absolutely true, Your Honor. And this case is an arbitration. Correct. It's not even properly presented. On this binding, non-binding issue, I believe that it's a red herring. It doesn't matter whether it's binding, non-binding. The question is, what are you asking this individual to do? Declare a winner and a loser? Or say, come on guys, let's work it out. But even if we're going to get into that label, binding, non-binding, this was binding. It was absolutely binding with respect to who has to pay for the arbitrator fees. Isn't the binding and non-binding nature an indicium of whether it is a mediation or an arbitration? And it was not binding here because they could go to an appellate level. Well, interestingly, Your Honor, it was go to an appellate level within the arbitration context. Now, then if there was an adverse decision there, my adversary would say it was not binding, they could go to court. And I would say he's partially right. There was what we call the get out of jail free card, which is if the infringer stops infringing, the other side can't go to court. So in that respect, it was binding. And under certain circumstances, the loser of the appeal actually had to pay attorney's fees. So that's binding. So this is, again, not a scenario where, come on guys, let's get together and resolve this. The underlying merits of the arbitration or the process are not binding. In one instance, they are. And that's where the infringer stops. You can't sue them. It's binding. You cannot sue them. But you're absolutely right, Your Honor. If the infringer doesn't stop or if it goes the other way, non-infringement is found or invalidity, you're absolutely correct, it's not substantively binding. You're saying that the binding and non-binding nature at various stages should not be the decisive factor here. It's an absolute red herring. And a perfect example would be Judge Bryson's of a trial court where you go in, it's combat, it's not compromise. Everybody puts their best foot forward, you get a winner and a loser. And then you get to go to the next court and start over again. We're not going to, I hope, find that that is now privileged and you can't get the materials. It just makes no sense. In this case, I don't think the district court gets enough credit from our adversary. The district court did not just look at it and say, oh, it says arbitration, I guess there's no privilege. The district court made specific factual findings. The district court said that the dispute resolution agreements at issue here created a contradiction from a panel of neutral arbitrators. It's a factual finding, it's not clearly erroneous. It's a decision and it's a quasi-judicial procedure. Now, the court also specifically found, this is at page 89 of the appendix, that the dispute resolution procedures were not compromise negotiations. There are certain facts which are also further indicative of it being arbitration, not mediation. The absolute decision point is, what are you arguing for? A decision of who won and who lost versus compromise. And I'm sticking to that. There are certain things, however, which are indicative of it being an arbitration. And one of the things is our adversary actually acknowledged in the blue brief at page 43 that one touchstone of mediation versus arbitration, as stated in the Harrison case, is whether or not you get to walk away. Now, Harrison, by the way, is very far afield for our purposes here. It had nothing to do with privileges. It had to do with whether or not you were under the Lemon Law statute, but a completely different issue. But the Harrison court did say that one of the things that one looks at is whether or not you get to start the process and then leave. And our adversary actually acknowledged at page 43 of the blue brief that they agreed that that was indeed one indicia. Well, I would point out here that once the party started the hearing, they were bound. They could leave, but the hearing would go forward. That's not how mediation works. When mediation is involved and you're saying, come on, guys, let's get an agreement, if one party walks out, it sort of shuts down. You're not going to get an agreement with one party. But the party's agreement specifically says that once you start, you get to go forward. And I would refer the court to the appendix at page 168 and 202. And furthermore, on an appeal, a withdrawal would not terminate the ability of the appellate panel to award attorney's fees. You argue that the... I'm sorry, were you finished with that point? I am finished with that point, Your Honor. You argue to us that the difference between arbitration and mediation for this purpose is that unlike Mr. Trella's distinction, which is binding, non-binding, is that the adjudicator or arbitrator or mediator, whatever, declares a winner or loser. But I'm wondering how manageable that is as a standard because my experience, again, and this is anecdotal, I suppose, but is that it is not at all infrequent for a mediator, somebody who everybody would agree is a mediator, will say to one side, either alone or with everyone present, here are the points on which I expect that if you take this case to litigation, you will lose. And here are the issues on which I expect you will win. Now why isn't that a declaration of winners and losers at least in form? Well, I'd say a couple things. First of all, in my experience, I think he's telling the other side the same thing. Well, it depends on whether they're together in the room. Yes. There have certainly been... I've seen instances in which the mediator actually says that with both people in the room. It would be highly unusual for a mediator to say, you're going to win this case, you're going to lose. No, but what they usually say, is that you've got problems with this issue. This is a weak point for you. You are not likely to come out with a win in this. You better take that under consideration. As for you, you have a problem, let's say, in the patent setting. You have a problem with validity. And the Federal Circuit is very hard on these kinds of issues, and you've got this kind of issue. That's a problem for you. You are probably going to lose. I think that falls squarely within the idea of, is he trying to promote compromise? And he is trying to promote compromise in that situation. If I could make one point, Your Honor, this is about the significance of the issue below. There have been two recent filings that I think just highlight how badly and how important this information is to the underlying case. On August 19, 2011, I have three seconds, or I'm over. May I finish the thought? You can finish. Thank you, Your Honor. On August 19, 2011, Casey moved for summary judgment of no inequitable conduct on the Keeper patent. The Keeper patent is one of the ones that was subject to the arbitration. The issues in the arbitration were infringement, invalidity, and unenforceability. We are arguing in the case below that there was inequitable conduct involved in the prosecution of the Keeper patent with a withheld reference. The prosecuting attorney was deposed in our case. He couldn't remember a thing. Couldn't remember if he considered the reference. Couldn't remember if the reference was in the search report. Couldn't remember if he considered materiality and a bunch of other things. What he could not remember, by the way, is documented in the District Court at Docket Entry 494 at page 4. He was also deposed in the underlying arbitration almost 10 years ago. I'll be willing to bet that his memory was better almost 10 years ago. In our case, we not only have the inequitable conduct argument, but we also have Walker process and we have hand guards claims based in part on the Keeper patent. That's a long thought, Mr. Underhill. Do you want to conclude it? I'm sorry? Do you want to conclude it? If I could. Thank you for your questions. Certainly, if there's a decision below where an arbitration panel said, we find that this was secured through inequitable conduct and they decide to sue us anyway, that is awfully strong evidence for purposes of our Walker process argument. Thank you. Thank you, Mr. Underhill. Mr. Trella has two minutes left. Was it three minutes? I think you said three, Your Honor. Whatever the court will give me, I'll take. We'll give you three. Thank you. Let me pick up with the last point that Mr. Underhill was making, which first of all, obviously is not part of the record on appeal. It really underscores the problem. What he's saying is that by virtue of having participated in this ADR process, KC essentially created evidence that would not otherwise exist. If no mediation, arbitration, whatever you want to call it, had taken place, the witnesses' memories today would be the same as they are. Certainly they'd be no worse. This really goes to the point in Jaffe v. Redmond about would recognizing the privilege create an evidentiary detriment? In other words, would it shield from discovery information that would otherwise exist? In the mediation context, certainly here, it would not. Because if these proceedings had not occurred, Mr. Underhill and his client would be in precisely the position that they're in today. Nothing is being shielded that wouldn't otherwise exist. Turning to a couple of other points, the combat versus mediation point, let me just say one thing on that. Several of the district courts that have recognized the mediation privilege, Fulb, the Chester County Hospital case, the RDM sports case, considered arguments that they involved mediations that included adversarial briefs, position papers, that kind of thing that were served on the other party. The courts there rejected the argument that somehow those are different from other mediation materials and should be produced. Recognizing, again, that the incentives created when materials created for mediation are later subject to discovery. Also, the various court confidentiality rules that the panel referred to don't draw any distinction based on the kind of materials, whether it's private communications or materials or arguments shared with the other side. On the winner versus loser point, there is a variety of mediation. I think, Judge Bryson, it's what you were describing called evaluative mediation, where the mediator hears from both sides and basically tells them, here's what I think is going to happen in court and here's why you guys need to try to come together. That is facilitating a settlement, but it is also expressing a view on the merits. Now, whether it's in the form of something called a decision or it's in the form of a discussion around a table, it's the same thing substantively, and it certainly shouldn't make any difference here. Mr. Underhill talked about the differences among the states, and there certainly are differences among the states, but the point is, and several of the district courts have recognized this, all of the states, except apparently Delaware, recognize some form of mediation privilege, and that's what the courts have called it, a mediation privilege. And as the Chester County Court pointed out, the important thing is not the variations among the states concerning the precise contours of the privilege or exceptions to it, but the uniform recognition of the importance of shielding these materials from wide-open discovery because of the incentives created. The final point that I would make, if I could, is on the withdrawal, the ability to withdraw from the proceeding that Mr. Underhill mentioned. The fact is that the process was non-binding. It was a multi-month process. The final 12 hours were the hearing, and so the party said, well, look, if you're in it up until then and we've actually started the hearing, you can't pull out then and deprive the other side of the benefit of this evaluation. But it didn't change the fact that nothing was binding, nothing was being adjudicated. It wasn't being adjudicated, nothing was being adjudicated before, nothing was being Mr. Trello, we will neither arbitrate nor mediate this issue. We will decide the case. I appreciate that, Your Honor. The case will be taken under advisement. All rise.